DEL SOLE, Judge:
This appeal raises important issues regarding a putative father’s right to request court ordered blood tests to determine paternity and the rights of the child’s mother and the man who is named as the child’s father on his birth certificate, to not undergo such testing.
N.E.E. gave birth to a son, B.T., on June 22, 1990 and at that time, chose not to name B.T.’s father. She testified that when B.T. was conceived, she was involved in sexual relationships with three men, M.C.E., C.T.D. and S.M. and while she believed that M.C.E. was B.T.’s biological father, she chose not to name him as such because their relationship was still developing.
N.E.E.’s relationship with M.C.E. continued throughout her pregnancy and she also remained in contact with C.T.D. He accompanied her to the doctor on a couple of occasions, and they exchanged several letters. In one of her letters to him, N.E.E. informed C.T.D. that it was her belief that either he or S.M. was the father of her baby, but that nothing could be determined for sure until the baby was born and blood tests were performed. M.C.E. was not mentioned in the letter. As her pregnancy progressed, contact between C.T.D. and N.E.E. lessened and eventually ceased following a phone conversation that occurred between them two days after B.T.’s birth. During that conversation, N.E.E. told C.T.D. that the baby was a boy and that she was now with M.C.E. who had been at her side during B.T.’s birth.
After B.T. was born, the relationship between N.E.E. and M.C.E. continued. In June 1991, N.E.E. and B.T. moved in with M.C.E. and his parents and within a few months, M.C.E., N.E.E. and B.T. moved into a home of their own. On December 31,1991, M.C.E. and N.E.E. married and on March 5, 1992, a new birth certificate was issued for B.T. naming M.C.E. as his father.
On March 24, 1992, N.E.E. received a letter from an attorney representing C.T.D. and S.M. requesting that all parties involved submit to blood testing to determine the identity of B.T.’s biological father. N.E.E. refused to submit to the testing and on June 22, 1992, C.T.D. and S.M. filed a Complaint seeking partial custody and visitation of B.T. and a *30 Petition for Blood Tests.[1] Acting upon an agreement that was purportedly entered into between N.E.E., C.T.D. and S.M., the court entered a Consent Order directing that the parties submit to blood tests. Subsequently, N.E.E. filed a Motion for a Protective Order challenging the veracity of the Consent Order on the grounds that it was improperly granted because N.E.E.’s attorney acted without authority to enter into it on N.E.E.’s behalf and that it was improperly granted without M.C.E.’s joinder and consent. The court granted the Protective Order and an evidentiary hearing was held for the purposes of taking testimony relating to the petition for blood tests. After hearing testimony from the parties, the trial court ordered the tests and this appeal followed.[2]
N.E.E. and M.C.E. argue that the trial court erred in ordering the blood tests. They allege that C.T.D. was estopped from requesting the tests because his petition was not filed until B.T. was almost two years old. They argue that in the interim they established a family unit and Appellee failed to claim or establish any parental right to B.T. during that time.
Subsection “c” to the Uniform Act on Blood Tests to Determine Paternity, 23 Pa. C.S.A. § 5104 provides as follows:
(c) Authority for test.—In any matter subject to this section in which paternity, parentage or identity of a child is a relevant fact, the court, upon its own initiative or upon suggestion made by or on behalf of any person whose blood is involved, may or, upon motion of any party to the action made at a time so as not to delay the proceedings unduly, shall order the mother, child and alleged father to submit to blood tests. If any party refuses to submit to the tests, the court may resolve the question of paternity, parentage or identity of a child against the party or enforce its order if the rights of others and the interests of justice so require.
23 Pa.C.S.A. § 5104(c).
This court has held that “[wjhile the Act creates a statutory right to obtain blood testing to determine paternity, the right is not absolute and must be balanced against competing societal/family interests.” McCue v. McCue, 413 Pa.Super. 71, 74, 604 A.2d 738, 739 (1992), allocatur denied, 531 Pa. 655, 613 A.2d 560 (1992) citing Donnelly v. Lindenmuth, 409 Pa.Super. 341, 344, 597 A.2d 1234, 1235 (1991). N.E.E. and M.C.E. argue that C.T.D.’s alleged right to the testing is far outweighed by the fact that they have established a family and that C.T.D. has failed to develop any relationship with B.T. In particular, N.E.E. and M.C.E. rely on 23 Pa.C.SA § 5102(b) for the proposition that paternity by estoppel bars C.T.D. from seeking and obtaining the requested testing. It reads as follows:
(b) Determination of paternity.—For purposes of prescribing benefits to children born out of wedlock by, from and through the father, paternity shall be determined by any one of the following ways:
(1) If the parents of a child born out wedlock have married each other.
(2) If, during the lifetime of the child, it is determined by clear’ and convincing evidence that the father openly holds out the child to be his and either receives the child into his home or provides support for the child.
(3) If there is clear and convincing evidence that the man was the father of the child, which may include a prior court determination of paternity.
23 Pa.C.S.A. § 5102(b).
Because N.E.E. and M.C.E. married after B.T.’s birth, there is no presumption that M.C.E. is B.T.’s biological father. See Everett v. Anglemeyer, 425 Pa.Super. 587, 625 A.2d 1252 (1993) and John M. v. Paula T., 524 Pa. 306, 571 A.2d 1380 (1990) cert. denied, 498 U.S. 850, 111 S.Ct. 140, 112 L.Ed.2d 107 (1990) (presumption exists that a child is a child of the marriage where the child is born to a married woman). Recog *31 nizing that that presumption does not apply to this case, N.E.E. and M.C.E. argue instead that this case should be determined according to the doctrine of paternity by estoppel.
“[P]rinciples of estoppel are peculiarly suited to cases where the child is conceived out of wedlock and no presumptions of paternity apply.” Jefferson v. Perry, 432 Pa.Super. 651, 656, 639 A.2d 830, 833 (1994). “In simplistic terms, the doctrine [of equitable estoppel upon which paternity by estoppel is based] is one of fundamental fairness such that it prevents a party from taking a position that is inconsistent to a position previously taken and thus disadvantageous to the other party.” In re Estate of Simmons-Carton, 434 Pa.Super. 641, 654, 644 A.2d 791, 798 (1994). Paternity by estoppel has been used to prevent an individual who has held himself out to be a child’s father from later seeking blood testing in an effort to prove that he is not the child’s father. In the Matter of Michael Ronald Montenegro, Jr., 365 Pa.Super. 98, 528 A.2d 1381 (1987). Likewise, the doctrine has also been used to prevent a child’s natural mother from successfully seeking blood testing where her objective was to disprove the paternity of the man she previously acknowledged to be the child’s father. McCue v. McCue, supra; Gulla v. Fitzpatrick, 408 Pa.Super. 269, 596 A.2d 851 (1991) and Seger v. Seger, 377 Pa.Super 391, 547 A.2d 424 (1988).
In the present case, C.T.D. is not seeking to deny that he is B.T.’s father, but rather he wants to establish that he is his father. N.E.E. and M.C.E. argue that under the doctrine of paternity by estoppel, factors such as them marriage, B.T.’s new birth certificate and the fact that M.C.E. has continually held B.T. out as his son, effectively estop C.T.D. from asserting his paternity. We disagree. Paternity by estoppel as discussed above, applies to those situations where “blood tests may well be irrelevant, for the law will not permit a person in [those] situations to challenge the status which he or she has previously accepted.” John M. v. Paula T., 524 Pa. 306, 318, 571 A.2d 1380, 1386-87 (1990) cert. denied, 498 U.S. 850, 111 S.Ct. 140, 112 L.Ed.2d 107 (1990). While it is clear that paternity by estoppel could be applied to preclude either M.C.E. or N.E.E. from challenging M.C.E.’s paternity, we find no support for the argument that their actions can estop C.T.D. from asserting his alleged paternity. Instead, we find that C.T.D.’s failure to act during B.T.’s first two years of life may have effectively estopped him from now raising his claim of paternity.
From 1990 until 1992, C.T.D. had no contact with either mother or child. By his own account, he made no attempt to establish a relationship with B.T. or offer him any financial support. Under these circumstances, we hold that a determination of whether C.T.D. abandoned B.T. is crucial to the disposition of this case. As we have recognized in the Adoption Act, a parent’s rights to a child may be terminated after six months if the court finds that “[t]he parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition [for involuntary termination of parental rights] either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.” 23 Pa.C.S.A. § 2511(a)(1). By analogy, in a case as the one presented here, the trial court should determine if the putative father has failed to timely exert his parental claim. Part of that determination should examine whether N.E.E. and M.C.E. by their actions frustrated C.T.D.’s ability to seek custody or visitation. If there is no evidence that N.E.E. and M.C.E. prevented C.T.D. from visiting the child or that C.T.D. made any attempt to establish paternity for two years, the request for blood tests should be denied. The dissenting author claims that in reaching our decision we have “failed to give adequate consideration to C.T.D.’s right to share in the support and companionship of a child who may be his own.” This criticism is unfounded. We have carefully considered C.T.D.’s rights but we believe that he may have relinquished those rights through his actions. Being a parent is more than a biological function. It requires a commitment to the child which is many times demanding. Therefore, if the court finds that C.T.D. has failed to exercise his parental claim, there is no reason to disturb the famil *32 ial relationship that has developed between B.T., N.E.E. and M.C.E.
Accordingly, we find it necessary to remand this matter to the trial court for a determination of whether C.T.D.’s actions amounted to an abandonment of his potential paternal responsibilities to the degree that he allowed an uncontested father-child relationship to develop between M.C.E. and B.T. If the trial court finds that C.T.D. abandoned B.T., C.T.D.’s request for blood testing should be denied.
Order reversed and case remanded to the trial court for proceedings consistent with this Opinion. Jurisdiction relinquished.
WTEAND, J., files a dissenting opinion.

. S.M. was originally a party but he has since withdrawn.

. Orders directing that parties submit to blood tests for purposes of determining paternity are appealable. Jones v. Trojak, 535 Pa. 95, 634 A.2d 201 (1993).